**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**K.P., individually,**

    **Plaintiff,**

**v.**                                                    **Case No.**

**THE BOARD OF TRUSTEES FOR
ALABAMA AGRICULTURAL &
MECHANICAL UNIVERSITY d/b/a
ALABAMA A&M UNIVERSITY**

## COMPLAINT

**COMES NOW** the Plaintiff, K.P., by and through his/her undersigned counsel, hereby sues Defendant, THE BOARD OF TRUSTEES FOR ALABAMA AGRICULTURAL & MECHANICAL UNIVERSITY d/b/a ALABAMA A&M UNIVERSITY (hereinafter referred to as "ALABAMA A&M"), and alleges as follows:

## PRELIMINARY ALLEGATIONS

1. Plaintiff, K.P.[1] was, at all times material, a student at ALABAMA A&M.

2. Defendant, THE BOARD OF TRUSTEES FOR ALABAMA AGRICULTURAL & MECHANICAL UNIVERSITY constitute a body corporate. *See* Code of Ala. § 16-49-21.

3. THE BOARD OF TRUSTEES FOR ALABAMA AGRICULTURAL & MECHANICAL UNIVERSITY has "all the rights, privileges and franchises necessary to the promotion of the ends of its creation and shall be charged with all corresponding duties, liabilities, and responsibilities." Code of Ala. § 16-49-22.

---

[1] The Plaintiff's name and identity have been disclosed to and are known to the Defendant. Plaintiff's name is represented by initials in this Complaint to protect the identity of the Plaintiff given the nature of the actions giving rise to this Complaint.

4.  THE BOARD OF TRUSTEES FOR ALABAMA AGRICULTURAL & MECHANICAL UNIVERSITY has "exclusive jurisdiction, power and authority with regard to the supervision, management, and control of Alabama Agricultural and Mechanical University…" Code of Ala. § 16-49-224.

5.  THE BOARD OF TRUSTEES FOR ALABAMA AGRICULTURAL & MECHANICAL UNIVERSITY therefore operates a university under the name of Alabama A&M University.

6.  ALABAMA A&M receives federal financial assistance and is therefore subject to the dictates of 20 U.S.C. § 1681. ("Title IX")

7.  Title IX provides "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

8.  This Court has subject jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.  Venue in this Court is proper under 28 U.S.C. § 1391(b) because the events giving rise to this claim took place in this judicial district, and Defendant resides in this judicial district.

10.  Plaintiff has complied with all conditions precedent to the filing of this lawsuit.

## FACTS RELATING TO PLAINTIFF'S ASSAULT

11.  Plaintiff enrolled as a student at ALABAMA A&M beginning his/her freshman year of college in the 2023 - 2024 academic year.

12.  During the freshman year, Plaintiff was employed as a desk assistant at Stephens Hall, a dormitory on the ALABAMA A&M campus.

13.  As a desk assistant, Plaintiff's boss was Calvin Lee, the Resident Hall Director, directly employed by ALABAMA A&M.

2

14.    Plaintiff, as a condition of his employment, was required to abide by and conform to the directions and orders given to him by the Resident Hall Director.

15.    At the end of Plaintiff's freshman year, he was offered employment as a Resident Assistant ("RA") in Hopkins Hall under the supervision and direction of Resident Hall Director, Calvin Lee ("LEE").

16.    At the time, Plaintiff was also involved in the Bulldog Beat.  The Bulldog Beat schedule and the RA schedule had conflicts requiring Plaintiff to having a meeting with the Bulldog Beat director and LEE to create a schedule where Plaintiff could be involved in both organizations.

17.    Two days after that meeting, LEE, as the Resident Hall Director gave Plaintiff an ultimatum: chose either the Bulldog Beat or being an RA, otherwise LEE would fire Plaintiff from his RA employment.

18.    Days later, on or about August 5, 2024, LEE directed Plaintiff, then an 18-year-old sophomore and newly assigned RA, to go to the fourth floor of Hopkins Hall under the stated pretext of inspecting rooms for suitability for incoming student residents.

19.    Once LEE had isolated Plaintiff on the fourth floor, LEE grabbed Plaintiff's right hand and forcibly placed it on LEE's genitals area, making physical contact with Lee's genitals.

20.    LEE attempted to kiss Plaintiff, forcibly pulled down Plaintiff's pants, and made repeated attempts to hug Plaintiff from behind and force Plaintiff to hold LEE's hands. Plaintiff physically resisted and fled the fourth floor.

21.    Plaintiff then returned back to the first floor.  LEE confronted Plaintiff on the first floor and LEE again grabbed Plaintiff's face, rubbed it, and moved hair away from Plaintiff's face

while stating, in substance, "I have to look and make sure nobody seeing me do this," demonstrating consciousness that LEE's conduct was wrongful and required concealment.

22.    Plaintiff promptly reported the assault to ALABAMA A&M's Department of Public Safety.

23.    LEE was interviewed by law enforcement where he admitted engaging in "horseplay" with Plaintiff and holding hands with Plaintiff multiple times on the fourth floor of Hopkins Hall.

24.    LEE further admitted that when Plaintiff went back downstairs to the office, LEE began rubbing Plaintiff's back, asking if Plaintiff "felt uncomfortable."  LEE then described that Plaintiff abruptly left without explanation.

25.    LEE admitted to law enforcement that his touching of Plaintiff was "inappropriate."

26.    LEE further explained to law enforcement that he takes RA's out to dinner and holds hands with them.

27.    LEE further admitted to similar conduct while at his employment at Alabama State University from 2009 to 2022.

28.    LEE was subsequently arrested and criminally charged with Sexual Misconduct under Alabama Code § 13A-6-65.

29.    As a result of the assaults by LEE, Plaintiff's grades dropped, Plaintiff became increasingly isolated from his peers, his friends, his colleagues, his work, and his educational opportunity.  Plaintiff has suffered significant physical manifestations of psychological trauma, including panic attacks, hyperventilation, nightmares, and night sweats.  Plaintiff has

4

continuously undergone intense psychotherapy incurring both out of pocket expenses and time away from education and work.

30.    As a result of the assaults by LEE, Plaintiff was forced to withdraw from his education at ALABAMA A&M, moved back home, and attempted to get his life back to the state it was before the assaults.

31.    As a result of the assaults by LEE, Plaintiff has foregone his career hopes and dreams, been denied multiple employment opportunities, including serving in the armed forces because he cannot qualify with a PTSD diagnosis.

### ALABAMA A&M'S ACTUAL NOTICE OF LEE'S HISTORY OF MISCONDUCT

32.    LEE was originally employed by ALABAMA A&M from 1993 to 2009.

33.    Upon information and belief, LEE's termination of employment from ALABAMA A&M in 2009 was the result of allegation of sexual misconduct involving students and subordinates, similar to the circumstances of Plaintiff's assault.

34.    Therefore, ALABAMA A&M had actual notice of LEE's sexual misconduct involving student and subordinate years prior to the sexual misconduct LEE perpetrated on Plaintiff.

35.    Notwithstanding this history, ALABAMA A&M rehired LEE in or around 2022 and placed him in a supervisory role over young student-employees residing in ALABAMA A&M owned dormitories, including as Residential Hall Director.

### ALABAMA A&M's INSTITUTIONAL INFERENCE TO SEXUAL MISCONDUCT OF ITS EMPLOYEES

36.    The sexual assault of Plaintiff did not occur in a vacuum. It occurred within, and was made foreseeable by, a longstanding institutional culture at ALABAMA A&M in which

allegations of sexual misconduct by University employees have been minimized, concealed, or ignored by ALABAMA A&M 's senior administration and Board of Trustees.

37. Well before the August 5, 2024 assault of Plaintiff, publicly available investigative reporting placed ALABAMA A&M 's Board of Trustees, President, and senior administrators on notice that individuals in the top ranks of the University's administration had been credibly accused of sexual misconduct against subordinates and students. In a series of investigative articles published beginning in 2023, attorney and journalist Donald V. Watkins reported allegations of sexual misconduct and unwanted sexual advances against subordinates involving Trustee Kevin S. J. Ball, President Daniel K. Wims, Provost John D. Jones, and former Assistant Vice President for Finance Norman E. Jones.

38. The personal histories and allegations of unwanted sexual advances against subordinates by these ALABAMA A&M officials were readily documentable, and in at least two instances there were written findings of actual sexual misconduct.

39. Further, the job applications and resumes of certain senior ALABAMA A&M officials, including President Daniel K. Wims, Provost John D. Jones, and former Assistant Vice President Norman E. Jones, were scrubbed and sanitized in a manner intended to prevent background checkers from discovering their alleged propensities to prey upon members of the university community.

40. Upon information and belief, these publications were widely disseminated within the Huntsville community and the broader network of historically Black colleges and universities beginning in October 2023, and were known to, or reasonably should have been known to, ALABAMA A&M's Board of Trustees, its President, its Office of General Counsel, its Human Resources Department, and its Title IX Coordinator.

41.     Despite this public and repeated notice of alleged sexual predation within the highest ranks of the University's administration, ALABAMA A&M's Board of Trustees took no meaningful corrective, investigatory, or remedial action. To the contrary, upon information and belief, the Board "turned a blind eye" to allegations of misconduct, including allegations concerning the sitting University President.

42.     This top-down tolerance of alleged sexual misconduct—reflected in the retention and continued elevation of senior officials accused of preying on subordinates—created, sanctioned, and perpetuated an institutional environment at ALABAMA A&M in which lower-ranking supervisory employees, including LEE, reasonably understood that sexual misconduct against student-employees would not result in serious consequences.

43.     The environment of indifference is further evidenced by ALABAMA A&M 's rehiring of LEE in or around 2022, notwithstanding his prior separation from the University amid allegations of sexual misconduct, and by ALABAMA A&M's failure to conduct any meaningful screening, monitoring, or supervision of LEE after placing him in a position of authority over young student-employees in residential housing.

44.     The environment of indifference is also reflected in ALABAMA A&M's handling of related personnel and Title IX matters, including reports that ALABAMA A&M faculty members alleging retaliation for reporting misconduct have been terminated rather than protected, further chilling internal reporting and reinforcing the message that employees who engage in sexual misconduct will be shielded and those who report it will not.

45.     Taken together, these facts establish a longstanding custom, policy, or practice of deliberate indifference by ALABAMA A&M to sexual misconduct by its employees, of which the University's policymakers—including its Board of Trustees, President, Office of General

Counsel, Human Resources leadership, and Title IX Coordinator—had actual or constructive knowledge prior to August 5, 2024. That custom and practice was a moving force behind, and made foreseeable, the sexual assault of Plaintiff by LEE.

## ALABAMA A&M'S DELIBERATELY INDIFFERENT RESPONSE TO PLAINTIFFS ASSAULT

46. Notwithstanding actual knowledge of the assault, ALABAMA A&M's response was clearly unreasonable in light of the known circumstances. ALABAMA A&M failed to promptly and meaningfully communicate with Plaintiff, failed to offer counseling or Title IX supportive measures, and failed to provide the interim protective measures required by its own Title IX Policy.

47. ALABAMA A&M withheld wages owed to Plaintiff for his RA work following the assault. Because LEE remained listed as the individual required to approve Plaintiff's paycheck—even while purportedly on administrative leave—Plaintiff received no compensation for RA work performed after August 5, 2024, and ALABAMA A&M took no reasonable steps to reassign approval authority.

48. On or about February 28, 2025, ALABAMA A&M terminated Plaintiff's RA employment, an adverse employment action that followed his protected reporting of sexual harassment and assault. *See* **Exhibit A** – *February 28, 2025 Termination Letter*.

49. ALABAMA A&M's response, viewed against the backdrop of its institutional environment of indifference to sexual misconduct by its employees, effectively communicated an "official decision not to remedy the violation" and subjected Plaintiff to continuing hostile educational and work environments on the basis of sex.

8

## COUNT I – VIOLATION OF TITLE IX

50.    The Plaintiff, hereby realleges and reavers all the allegations contained in paragraphs 1 through 49 above, as though fully set forth herein.

51.    ALABAMA A&M maintained a policy of indifference to sexual misconduct on its campus.

52.    ALABAMA A&M's policy of indifference created a heightened risk of sexual misconduct on campus that was known and/or obvious to ALABAMA A&M.

53.    LEE, a supervisory University employee, subjected Plaintiff to unwelcome sexual conduct so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to the educational opportunities and benefits provided by ALABAMA A&M, consistent with the standard articulated in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), and *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998).

54.    Appropriate persons at ALABAMA A&M —including its Title IX Coordinator, Deputy Title IX Coordinator, Office of Human Resources, Board of Trustees, and Department of Public Safety—had prior actual knowledge of LEE's history of similar sexual misconduct at ALABAMA A&M, and had prior actual or constructive knowledge of ALABAMA A&M 's broader institutional environment of indifference to sexual misconduct by its employees, as described above.

55.    As a direct and proximate result of ALABAMA A&M's Title IX violations, Plaintiff has suffered damages as detailed above, including but not limited to loss of educational opportunity, lost wages, loss of employment opportunity, out-of-pocket expenses for medical and psychological treatment, and other compensatory losses recoverable under Title IX. These losses are continuing.

9

56.     Plaintiff has retained the undersigned attorneys to prosecute this action on Plaintiff's behalf and has agreed to pay them a reasonable fee and to reimburse the costs of this action.

WHEREFORE, Plaintiff, demands judgment for damages, including attorney's fees and costs, against the Defendant, THE BOARD OF TRUSTEES FOR ALABAMA AGRICULTURAL & MECHANICAL UNIVERSITY d/b/a ALABAMA A&M UNIVERSITY, in an amount in excess of Seventy-Five Thousand and 00/100 ($75,000.00) Dollars, exclusive of costs and interest, and other relief this Honorable Court deems just and proper, and further demands trial by jury.

## DEMAND FOR JURY TRIAL

The Plaintiffs in the above styled cause hereby demand a trial by jury of all of the issues triable by right.

By: *Michael Hamilton Kugler*
Michael H. Kugler (FL Bar No. 0029121)
*Attorney for Plaintiff*
**GOLDLAW, P.A.**
1641 Worthington Road, Suite 300
West Palm Beach, FL 33409
(561) 697-4440
Primary Email: kp12127549@goldlaw.filevineapp.com
Secondary Email: MKugler@goldlaw.com
Paralegal's Email: cilerand@goldlaw.com
Secretary's Email: bvindel@goldlaw.com
*Pro Hace Vice to be Filed*


/s/ Taylor Rouse
Taylor Rouse (Ala. Bar No. 8709-R53M)
Attorney for Plaintiff and Local Counsel
Ryan & Rouse
525 Madison Street SE, Suite 210
Huntsville, AL 35801

10

(256) 286-5454
taylor@alabamamlaw.com

11

# EXHIBIT A



Office of Residential
Life and Housing
Normal, AL. 35762
256.372.5797 (O)
256.372.5792 (F)

Date: February 28, 2025

Dear K███ P██████ (████████)

We wish to extend our sincere appreciation for your efforts within the Department of Residential Life & Housing. Regrettably, we must inform you that your employment will be terminated effective March 1, 2025, due to a failure to comply with the stipulations outlined in the student staff agreement. The specific areas of non-compliance are as follows:

• GPA and Credits

• Availability and Duty

As a courtesy, you will not be charged for the remainder of the semester and will receive compensation for the current pay period (#6). However please be advised that you will be reassigned and required to move on or before March 5, 2025, to prevent any charges from accruing. We kindly request that you review the following sections of the agreement that pertain to the department's expectations following termination:

• Assignments & Reappointments

• Termination

Should you have any inquiries, please do not hesitate to contact Ms. Brenda Mallard at brenda.mallard@aamu.edu.

Service is Sovereignty,

Brenda J. Mallard, Area Coordinator for Residential Life and Housing